15 P.3d 1157

Kenneth HORSCH, Plaintiff–Appellant,

and

Eugene M. Higgins, Richard A. Line, Arthur Leisy, Richard Giesbrecht, Elgin Simonson, Kim Wahlen, Scott T. Pierce, Duane Barclay, Max King, Arthur Phillips, Raymond K. Duffin, Dwight W. Horsch, Paul W. Behrend and Brock Driscoll, Plaintiffs,

and

The Board of Directors of Aberdeen Springfield Canal Company, an Idaho corporation, Defendant–Appellant,

v.

Alan DE GIULIO, Defendant–Respondent,

and

John Houghland, Delon Huse, Clarence Schroeder and Charles Shackelford, in their individual capacities, Defendants.

No. 24427.

Supreme Court of Idaho, Boise, May 2000 Term.

Dec. 28, 2000.

**150**

Ling, Nielsen & Robinson, Rupert; Holden, Kidwell, Hahn & Crapo, Idaho Falls, for appellants. Roger D. Ling argued.

Bevis, Cameron & Johnson, P.A., Boise; Ringert Clark, Chartered, Boise, for respondents. Daniel V. Steenson argued.

SCHROEDER, Justice.

This is an appeal from a district court order entered in 1997 enforcing a 1994 injunction and enjoining the Aberdeen Springfield Canal Company's board of directors from changing or seeking to change the method of water delivery in the canal system from a continuous to non-continuous flow system. The Court vacates the district court order.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

The Aberdeen–Springfield Canal Company (ASCC) is an Idaho corporation organized for the purpose of distributing water to its shareholders located within Bingham County. The ASCC manages water distribution to its shareholders through an extensive canal system. Typically, shareholders order water one day before it is to be delivered to their turnouts in the canal system. The ASCC general manager then reviews the orders and water flow readings in the canal system, directs the necessary adjustments, and checks structures to deliver the shareholders' orders.

Traditionally, water delivery through all ASCC canal turnouts operates by gravity flow. ASCC ditch-riders deliver water by adjusting head gates at individual turnouts where the water is then measured as it flows into the shareholder's ditch or pond. The water is delivered continuously for a twenty-four hour period until the ditch-rider readjusts the head gate. Constant flow rates through the turnouts depend upon stable water levels in the canal system and in the shareholder's irrigation ditch or pond downstream from the turnout. Water delivered through these turnouts does not return to the canal system, and each shareholder is responsible for providing a drainage facility to convey any water ordered and unused. This type of turnout is called a "continuous flow" turnout.

Some shareholders have converted from the traditional gravity irrigation to sprinkler systems and installed pump lines in their turnouts that draw water directly from the canal. A turnout in which a pump is installed is controlled by the shareholder rather than by the ASCC ditch-rider. These turnouts are known as "non-continuous flow" turnouts because when a shareholder turns off the pump after placing an order, water does not continuously flow out of the canal system. Consequently, shareholders using non-continuous flow turnouts can cause flows in the ASCC canal system to fluctuate when they turn their pumps off after water is ordered.

Initially, the fluctuating flows caused by non-continuous water use resulted in localized problems in water delivery. Turnout flow rates became difficult to measure and control because water levels in the ASCC canal system fluctuated as non-continuous flow pumps were turned on and off at the shareholder's discretion. As the number of non-continuous flow turnouts increased, water fluctuations in the canal system increased to the point that the general manager was unable to maintain a consistent water level. The fluctuations caused spills and in some cases caused water to overflow onto the canal banks.

The ASCC board of directors (the Board) is the body charged with the general governing and operation of the corporation's business and other affairs. The Board is comprised of nine shareholder-elected directors who are shareholders themselves. In 1994, the Board implemented a rule adopting a uniform "continuous flow" system of irrigation pursuant to its powers under the bylaws of the corporation. The shareholders subse-

quently exercised their corporate powers and voted to abolish the Board's continuous flow policy. Thereafter, in contravention of the shareholder vote, the Board reinstated the policy and required all non-complying shareholders to sign a document (the Agreement) acknowledging their acceptance of a continuous flow system of water delivery in return for a one-year extension of non-compliance with the continuous flow policy. Those shareholders refusing to sign the Agreement would be immediately denied requests for water.

In April 1994, a number of shareholders filed a complaint in district court against the Board and five of its nine directors, individually, seeking a temporary restraining order and a preliminary and permanent injunction to enjoin the Board from implementing and enforcing the continuous flow policy on the grounds that the Board's adoption of the policy was illegal and in violation of the ASCC bylaws. The district court issued a temporary restraining order, enjoining the Board from enforcing the continuous flow policy and from requiring the shareholders to sign the Agreement. The restraining order was extended past the typical 14-day limit by stipulation of the parties. The district court further ordered that:

> [I]n the event this Court shall determine that the Company board of directors has the authority to reinstate the "continuous flow policy" that the Court shall modify and amend the restraining order to add that the plaintiffs and shareholders not complying with a "continuous flow policy" at this time shall be directed to execute such an agreement for the one year extension ... or be enjoined and estopped from claiming, demanding, or seeking the right to use a "non-continuous flow policy" or to challenge the enforceability of the canal Company's "continuous flow policy."

The Board and its five individually named directors filed a 12(b)(6) motion to dismiss the shareholder complaint, which was treated by the district court as one for summary judgment due to consideration of matters outside the pleadings. On April 14, 1994, the district court granted the motion for summary judgment, ruling that the Board has

the exclusive power to manage the affairs of the ASCC regardless of corporate bylaw provisions granting authority to the shareholders to disapprove of Board actions. Additionally, the restraining order was amended and modified to provide that:

> [T]he plaintiffs and Shareholders not complying with a "continuous flow policy" at this time shall be directed to execute such an agreement for the one year extension (extending the current use to the 1995 irrigation season) or be enjoined and estopped from claiming, demanding, or seeking the right to use a "non-continuous flow policy" or to challenge the enforceability of the canal Company's "continuous flow policy."

The shareholders subsequently filed a motion to alter or amend the district court order, which was denied. No appeal was taken from the district court's 1994 order.

In December of 1994 two new members were elected to the Board. In March of 1995 the Board voted to rescind the continuous flow policy, but in April of 1995 the Board voted to reinstate the continuous flow policy for the remainder of the 1995 irrigation season. In November of 1995 the Board again voted to rescind the continuous flow policy.

Alan DeGiulio (DeGiulio) is an ASCC shareholder who experienced problems in the delivery of water as a result of other ASCC shareholders operating pumps in nearby non-continuous turnouts. DeGiulio filed a motion in March of 1997 to enforce the district court's 1994 judgment and amended restraining order, asserting that certain shareholders and the new Board had failed and refused to comply with the district court's 1994 order. There had been no motion to vacate the 1994 injunction. The district court ruled that the 1994 injunction was still in effect and that the Board was estopped from "claiming, demanding or seeking the right to use a non-continuous flow policy." In the 1997 order of enforcement the district court characterized its 1994 order as a preliminary injunction. DeGiulio asserts that the 1994 order was actually a permanent injunction.

The plaintiff shareholders and the Board filed a motion to reconsider the court's order

of enforcement and to vacate the 1994 injunction. The district court denied both motions. The plaintiff-shareholders and the Board appeal.

## II.

### THE 1994 INJUNCTION SHOULD HAVE BEEN DISSOLVED WHEN THE BOARD CHANGED THE POLICY.

The parties have addressed a number of issues, including whether the 1994 injunction was still in effect in 1997, whether the 1994 injunction enjoined the Board and every shareholder, and whether the district court had the jurisdiction to modify or amend the 1994 injunction after the time for review passed. There is also an issue raised as to whether the district court erred in addressing issues not presented in the pleadings. These issues are all subsumed in the question of whether the district court should have granted the motion to vacate the 1994 injunction. The answer to that question is, yes.

The April 14, 1994, order was based upon the principle "that that Board has the exclusive power to manage the affairs of HSCC regardless of corporate bylaw provisions granting authority to the shareholders to disapprove of Board actions." In effect the order affirmed the authority of the Board in the action it had taken. The district court did not determine the best policy. It determined that the decision for management was with the Board. Consequently, the order had viability only so long as it enforced the management decision of the Board. The authority remained with the Board to determine management policy. The Board members were not bound by the terms of the 1994 injunction. The Board retained the authority to modify the policy. The district court had the jurisdiction to amend the 1994 injunction. To this point there is no problem. However, the district court shifted the focus of the case from the authority of the Board to determine management policy to the merits of the policy itself.

The determination of management policy is with the Board, not the Court. On the basis of this record it might appear that the district court made a wiser decision that the Board. Regardless, that is not the issue. When the case was brought, it tested the right to manage. Initially the district court determined that the Board had the right to manage. When the Board adopted a different policy, the injunction should have been dissolved. Instead the district court assumed the role of managing the Canal Company contrary to the policy determination of the Board.

## III.

### CONCLUSION

The district court order enjoining the Canal Company from changing or seeking to change the method of water delivery is vacated. The appellants are awarded costs. No attorney fees are awarded.

Chief Justice TROUT and Justices WALTERS and KIDWELL concur. Justice SILAK, concurs in result.